UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JAMES SNYDER,

    Plaintiff,

v.                                           Case No. 1:17-cv-486
                                           Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for supplement security income (SSI).

This case involves plaintiff's application for SSI. This claim has a lengthy history. On February 13, 2014, plaintiff filed an application for SSI alleging disability which began on February 1, 2014. PageID.177. The claim was denied initially, an administrative hearing held, and on November 10, 2014, Administrative law judge (ALJ) Carol Guyton entered a decision denying plaintiff's application and finding that plaintiff has not been under a disability since February 13, 2014 (his application date). PageID.187. After the Appeals Council denied plaintiff's request for review, plaintiff filed an appeal in this Court, which affirmed the ALJ's decision on March 16, 2016. PageID.46. *See Snyder v. Commissioner of Social Security*, 1:15-cv-137 (W.D. Mich. March 16, 2016); PageID.239-263.

Plaintiff filed the present application for SSI on March 16, 2015, in which he alleged an earlier disability onset date of October 21, 2011. PageID.419. Plaintiff identified his disabling conditions as: bipolar; anxiety disorder; post traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); and suicidal thoughts. PageID.424. Prior to applying for SSI, plaintiff completed the 10th Grade, with past employment as a car washer, clothing grader, cook, and shipping department (factory). PageID.425. The claim was denied initially, an administrative hearing held, and on January 14, 2016, ALJ Lori Imsland entered a decision denying plaintiff's application and finding that plaintiff has not been under a disability since March 16, 2015 (his application date). PageID.219, 232.

On March 17, 2016, the Appeals Council granted plaintiff's request for review, vacated the ALJ Imsland's January 14, 2016 decision, and remanded the case to an ALJ for the resolution of two issues. PageID.267-268. The Appeals Council's order set forth three instructions for the ALJ on remand. PageID.268-269. The matter was assigned to ALJ Donna J. Grit, who summarized the Appeals Council's instructions as follows:

> In its remand order, Appeals Council directed me to obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards; give further consideration to the claimant's maximum residual functional capacity and, in so doing, evaluate the treating and non-treating opinions pursuant to the Social Security Regulations and Rulings, explaining the weight given to such opinion evidence; and further evaluate the vocational relevance and functional demands of the claimant's past work (Ex. B7A/3-4). In remanding this case, the Appeals Council vacated the January 2016 Administrative Law Judge Decision (Ex. B5A and B7A).

PageID.45.

ALJ Grit reviewed plaintiff's claim *de novo* and entered a lengthy written decision denying benefits on December 23, 2016. PageID.45-77. This decision, which was later approved

2

by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.     The *Earley* opinion and *res judicata*

In the most recent decision, ALJ Grit noted that under the Acquiescence Rulings and Sixth Circuit case law, she was required to adopt certain findings made by ALJ Guyton:

> The prior decision mandates consideration of Acquiescence Rulings 98-3(6) and 98-4(6). These Acquiescence Rulings, as well as current case law in the Sixth Circuit, direct that an Administrative Law Judge must adopt findings from the final decision by an Administrative Law Judge or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding. The medical evidence of record, discussed in detail below, demonstrates a change in the severity of some of the claimant's impairments. Specifically, the record shows the claimant has had no exacerbations of pancreatitis during the period at issue and that his alcohol abuse disorder is currently in remission. Accordingly, I have determined that these impairments are non-severe during the period at issue. Additionally, the record demonstrates the claimant has non-severe obesity, hypertension, and hyperlipidemia. The medical evidence of record contains new and material in connection with the claimant's current application, which supports different limitations for the period beginning March 16, 2015, the date the application was filed. Accordingly, I am not bound by the residual functional capacity finding of the prior Administrative Law Judge as of that date. With regard to the claimant's past work, as discussed in detail below, I find that although the relevant period has changed, there is no new and material evidence with regard to the claimant's past work to justify not adopting the prior Administrative Law Judge's finding, that is, that there is no past relevant work.

PageID.47. The case law referenced by the ALJ is *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), which has been interpreted as requiring that the residual functional capacity (RFC) determination of a prior ALJ be adopted in a later application unless there is new and material evidence presented by the claimant.

Since plaintiff filed this action, the case law has changed. Specifically, the Sixth Circuit issued its opinion in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir.

3

2018), which examined the principles of *res judicata* as those principles pertain to a claimant's subsequent application for benefits. In addressing the principles, the court in *Early* asked:

> What are those principles? Finality, efficiency, and the consistent treatment of like cases. An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record. That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.

*Earley*, 893 F.3d at 933 (internal citations omitted). In *Earley*, the court noted that the doctrine of *res judicata* bars relitigation of the same claim but not litigation of a new claim. *Earley*, 893 F.3d at 933. Thus, "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Earley*, 893 F.3d at 933.

The Court has reversed and remanded ALJ decisions which relied on Acquiescence Ruling 98-4(6) and *Drummond* as contrary to the principles set forth in *Early*. In the Court's opinion, an ALJ does not perform a *de novo* review of the record when she commences that review by adopting a previous RFC determination, and then must provide an explanation as whether that RFC is still binding. *See Willis v. Sullivan*, 931 F.2d 390, 397 (6th Cir. 1991) (as part of the "four step process to facilitate the orderly and sympathetic administration of disputed claims . . . the claimant is entitled to an evidentiary hearing and a *de novo* review before an ALJ"). In such circumstances, the ALJ decision did not "start[] the process anew" when she evaluated the claimant's new application for benefits. *See Earley*, 893 F.3d at 932.

In the present case, however, the record reflects that on remand from the Appeals Council, ALJ Grit effectively re-opened ALJ Guyton's decision and performed a lengthy *de novo* review of the evidence commencing in 2011 (a date before the alleged onset date alleged in the application reviewed by ALJ Guyton). Under these circumstances, it appears to the Court that ALJ Grit followed the principles set forth in *Earley* and did in fact "start[] the process anew" after

4

the Appeals Council remanded the case to her. Accordingly, a remand is not necessary in this case.

## II. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### III. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since his application date of March 16, 2015. PageID.49. At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease; attention deficit hyperactivity disorder (ADHD); a mood disorder (called bipolar disorder and depression in the records); an anxiety disorder (called PTSD, generalized anxiety disorder, and obsessive-compulsive disorder in the records); and borderline personality disorder (20 CFR 416.920(c)). PageID.49. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.50.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand or walk for 6 hours in an 8-hour workday; never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; no work around hazardous machinery or unprotected heights; limited to simple, routine, and repetitive tasks in low stress work environments which are defined as minimal changes in job settings or duties, and only occasional judgment to perform simple tasks; no interaction with the general public; occasional interaction with coworkers and no tandem tasks; and only occasional interaction with supervisors when tasks are being performed as directed.

PageID.53.

The ALJ also found that plaintiff has no past relevant work. PageID.75.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.76-77.

Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the national economy such as laundry sorter (52,000 jobs), cleaner (125,000 jobs), and inspector (45,000 jobs). PageID.76-77. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 16, 2015 (the date the application was filed) through December 23, 2016 (the date of the decision). PageID.77.

## IV. DISCUSSION

Plaintiff set forth two issues (with sub-issues) on appeal:

**A. The ALJ's residual functional capacity (RFC) findings are not supported by substantial evidence under 20 C.F.R. § 416.945 and SSR 98-6p.**

**1. The ALJ failed to follow the regulations and law in her treatment of the opinions of plaintiff's treating nurse practitioner.**

Plaintiff contends that the ALJ did not properly evaluate the opinions expressed by Nurse Practitioner (NP) Corinne Overmyer. In reviewing ALJ Guyton's November 2014 decision, the Court determined that Nurse Overmyer was not an acceptable medical source to whom the treating physician rule applied.

> The opinions on which plaintiff relies were not the opinions of treating psychiatrists or physicians. Nurse Overmyer is a nurse practitioner and Ms. Deanda-Ring is a social worker. The treating physician rule did not apply to their opinions.

*Snyder v. Commissioner of Social Security*, No. 1:15-cv-137, 2016 WL 944905 at *7 (W.D. Mich. March 14, 2016). The same analysis applies in the present case. "The opinion of a 'non-acceptable medical source' [such as a nurse practitioner] is not entitled to any particular weight or deference— the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *Engebrecht v.*

8

*Commissioner of Social Security*, 572 Fed.Appx. 392, 397-98 (6th Cir. 2014)." *Noto v. Commissioner of Social Security*, 632 Fed. Appx. 243, 248-49 (6th Cir. 2015).

> Social Security Ruling 06–03p elaborates further as to how the ALJ should treat evidence from a non-acceptable medical source. SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006). This ruling recognizes that in some cases a non-acceptable medical source may have an insight as to the claimant's impairment that outweighs even a treating source's opinion depending on the nature of her treatment relationship with the claimant and the quality and supportability of her opinion. 2006 WL 2329939, at *5. Thus, "[o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id*. at *3. Moreover, "the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." *Id*. at *6. Finally, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that discussion of the evidence in the determination or decision allows a claimant and subsequent reviewer to follow the adjudicator's reasoning[.]" *Id*.

*Id*. at 249.

Plaintiff notes that NP Overmyer provided opinions of plaintiff's functioning in July 2014 and December 2015, and gave statements explaining her findings on August 12, 2014 and December 2, 2015. Plaintiff's Brief (ECF No. 10, PageID.1390). In addition, NP Overmyer gave a statement in June 2016 in which she indicated that the limitations found in December 2015 essentially continued with the additional condition of increased depression. PageID.1390.

The record reflects that ALJ Grit reviewed each of those opinions in detail. The ALJ gave little weight to NP Overmyer's July 2014 opinion which stated in part that "the claimant is unable to meet competitive standards in maintaining attention for two hour segments, maintaining regular attendance and being punctual, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruption from symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, deal with normal

9

work stress, and get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes (Ex. B13F/1-2)." PageID.64. She also stated that plaintiff had a "limited but satisfactory ability to remember work-like procedures, make simple work decisions, be aware of normal hazards and take appropriate precautions, and understand, remember, and carry out simple and short instructions with unlimited or very good ability to ask simple questions or request assistance," "extreme difficulties maintaining concentration, persistence, or pace with marked difficulties in maintaining social functioning," "one or two episodes of decompensation," and "[s]he estimated he would be absent from work more than four days a [month]." PageID.64.[1] This being said, NP Overmyer also found that plaintiff had "none to mild restriction in activities of daily living." PageID.64.

In evaluating this opinion, ALJ Grit reviewed the medical record in detail, and noted that NP Overmyer's assessment is from a previously adjudicated period, prior to the current application date, and not consistent with the record as a whole, including more recent evidence. PageID.64-65. She noted that since filing the current application, plaintiff received generally conservative treatment, with no in-patient hospitalization for his mental impairments on or after March 16, 2015. PageID.65. ALJ Grit further stated:

> The record also demonstrates improvement with treatment (*See Ex*. B4F/11, 16, 47, 53, 59, 65, 71, 76; B18F/11; B21F/2; B28F/93, 98, 101-102, 107, 114, 121-123, 129-131; B32F/1; B33F/1; B37F/2; B39F/1-3; B41F/2-4; and B42F/2-3). As noted above, the claimant has presented with some positive findings related to his mental impairments. However, during evaluations, the claimant was frequently polite, cooperative, and/or pleasant with good eye contact (Ex. B2F/3-4; B4F/11-72; B21F/2; B28F/2, 78-131; B33F/2; B37F/4; B38F/3; B39F/3, 11). In April, May, June, July, and December 2014, as well as in January, February, March, October, November, and December 2015, he had intact attention and concentration (Ex. B4F/ 11- 17, 54-72; B21F/2; and B28F/2, 103-116). During a consultative

---

[1] While ALJ Grit's decision stated that NP Overmyer estimated that plaintiff "would be absent from work more than four days a *week*" (PageID.64) (emphasis added), NP Overmyer's opinion actually indicated that plaintiff's impairments or treatment would cause him to be absent from work "More than four days per *month*" (Exh. B13F/3, PageID.732) (emphasis added).

10

evaluation in July 2015, his long-term memory was appropriate (Ex. B7F/3-4). In January and July 2016, it was noted in the claimant's social history that the claimant had average ability to understand instructions (Ex. B32F/2 and B38F/2). In February, April, June, August, and September 2016, he had intact attention and concentration (Ex. B28F/ 123, 131; B33F/2; B37F/4; B39F/3, 11; B41F/4; and B42F/4). The claimant is able to live independently, use public transportation, handle his own finances, attend to his personal care independently and without reminders, prepare his own meals, perform household chores, and shop as well as consistently attend appointments (Ex. Testimony; B3E; B7F; B18F; and B28F). Accordingly, I give little weight to this assessment.

PageID.65.

In a recorded statement given on July 23, 2014 (signed August 12, 2014), NP Overmyer expressed the opinion that plaintiff met the criteria for depressive syndrome under Listing 12.04. PageID.65, 733-734. ALJ Grit gave this opinion little weight for similar reasons. PageID.65-66.

On December 2, 2015, NP Overmyer re-affirmed her July 2014 assessment. PageID.717-719. ALJ Grit gave little weight to NP Overmyer's opinion, for the same reasons as the earlier opinions, noting that the most recent assessment is not consistent with the record as a whole, including Ms. Overmyer's own treatment records. PageID.67.

NP Overmyer followed up the written opinion with a recorded statement regarding plaintiff conditions in December 2015, in which "[s]he opined that he would decompensate and that he would have the limitations set forth in the December 2015 residual functional capacity assessment if he was placed in a full time, simple, unskilled work situation (Ex. B25F/3)." PageID.68. ALJ Grit reviewed both an unsigned and signed statement of this recorded statement. PageID.67-70. The ALJ noted some discrepancies between the language used in the unsigned transcript versus the signed transcript. PageID.68. For example,

> The initial document notes that the claimant is "a man functioning not so bad as long as he has a very strictly controlled environment and is on some fairly strong medications," whereas the signed document notes that the claimant is "a man who

11

is functioning in a limited capacity as long as he has a controlled environment and is on psychotropic medications" (Ex. B25F/3 and B26F/3). In the original document, it was noted that the claimant would decompensate and have the limitations described in the residual functional capacity, although in the signed form, it notes only that the claimant's mood and behavior would decompensate (Ex. B25F/3 and B26F/3). Additionally, in the original document, it was noted that "certainly drinking was a factor" in the claimant's suicide attempt, whereas in the signed statement, it was noted that "[d]rinking could have been a factor" in this attempt (Ex. B26F/4).

PageID.69.

After noting the opinions expressed and inconsistencies in the December 2015 statements, ALJ Grit gave little weight to the opinions. PageID.69-70. As in her previous evaluations, ALJ Grit noted, among other things, that plaintiff had intact attention and concentration, had average ability to understand instructions, demonstrated improvement with treatment, and was able to live alone, use public transportation, handle his own finances, attend to his personal care independently, prepare meals, perform household chores, shop, and consistently attend appointments. PageID.69-70.

Finally, ALJ Grit gave little weight to NP Overmyer's June 2016 statement, in which "[s]he indicated her assessed limitations in December 2015 were similar to the claimant's limitations in June 2016, noting the only difference would be increased depression." PageID.70. NP Overmyer opined that plaintiff would be incapable of working, e.g., "he would be completely overwhelmed and decompensate to the point where he would be non-functional, possibly engaging in some kind of self harm, if he had a five day a week, eight hour a day job and had to try to force himself to get out and get to the job site every day," that she believes "his future risk of a suicide attempt is higher than in the past due to increased depression," and that "sheltered work, in the right context, could be good for him" but "that putting him into a competitive context with no special coaching or support could be detrimental with the expectations too much and too

overwhelming." PageID.70. ALJ Grit gave these opinions little weight for the same reasons as NP Overmyer's previous opinions. PageID.70-71.

Based on this record, it appears to the Court that ALJ Grit performed an extensive review of NP Overmyer's opinions and the medical record before assigning those opinions little weight. ALJ Grit's review met or exceeded went far beyond the articulation requirement "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that discussion of the evidence in the determination or decision allows a claimant and subsequent reviewer to follow the adjudicator's reasoning[.]" *Noto*, 632 Fed. Appx. at 249. "It is the Commissioner's function to resolve conflicts in the medical evidence." *Craft v. Commissioner of Social Security*, 39 Fed. Appx. 274, 276 (6th Cir. 2002). ALJ Grit performed this function with respect to NP Overmyer's opinions. Accordingly, plaintiff's claim of error will be denied.

> **2. Because the ALJ failed to obtain a clarification of CE Daniel Walberer, Ed.D.'s opinions, as directed by the Appeals Council, her findings are not supported by substantial evidence.**

Plaintiff contends that the ALJ erred by failing to clarify Dr. Walberer's opinions as directed by the Appeals Council. The Appeals Council's order provided as follows:

> Further evaluation of the opinion evidence is necessary. The Administrative Law Judge [Guyton] gives great weight to the opinion of consultative examiner Daniel Walberer, Ed.D. Although the Administrative Law Judge notes the opinion is largely lacking in specific, quantified limitations, she gives it weight because the limitations are supportive of her own residual functional capacity finding (Decision, page 12; citing Exhibit B7F). That rationale is flawed, in part because it is circular, and in part because it is unclear whether, given that vagueness, the Administrative Law Judge's residual functional capacity finding is truly consistent with limitations such as a "moderate" limitation in "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods" (Exhibit B7F, page 5). It may be necessary to recontact this source in an effort to resolve the opinion's vagueness.

13

PageID.268.

Plaintiff's claim is without merit. First, whether an ALJ failed to follow instructions from the Appeals Council is not subject to judicial review. *See* 42 U.S.C. § 405(g) (judicial review is limited to "any final decision of the Commissioner of Social Security made after a hearing to which he was a party"). Second, the ALJ was not required to recontact the doctor. The Appeals Council's order stated that " [i]t *may* be necessary to recontact [Dr. Walberer] in an effort to resolve the opinion's vagueness" (PageID.268) (emphasis added). The record reflects that ALJ Grit did recontact Dr. Walberer by sending him interrogatories. Accordingly, plaintiff's claim of error will be denied.

### 3. The ALJ's interpretation of Dr. Walberer's findings is not supported by substantial evidence.

Plaintiff contends that ALJ Grit's interpretation of Dr. Walberer's opinion is not consistent with the interrogatory responses received after the remand. The SSA's Office of Disability Adjudication and Review sent the following letter interrogatories to the doctor after the remand:

> On July 02, 2015, you performed a Psychological Evaluation on Michael Snyder for the Michigan Disability Determination Service. After the hearing decision in March, 2016, the Appeals Counsel [sic] remanded the case back to the hearing level. Before another hearing may be held, the Administrative Law Judge must address certain issues identified by the Appeals Counsel [sic]. Specifically <u>we are asking you to define the term "moderate" in a quantitative manner as was used by you in the following sentences</u> found in Exhibit B7F:
>
> 1. The claimant's ability to make simple work-related decisions would seem to be limited. The claimant's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonably [sic] number of rest periods would seem to be moderately limited.
>
> 2. The claimant's ability to interact with others in an appropriate manner would seem to be moderately limited.

14

> 3. The claimant's ability to respond appropriately to changes in the work place, be aware of normal hazards, and take appropriate precautions would seem to be moderately limited.

PageID.1351-1352 (emphasis added).

Dr. Walberer provided the following response:

> In response to your letter dated September 22, 2016, moderate refers to the severity according to the function limitations imposed by medical and emotional issues presented by the claimant. It is based on the effect these have on activities of daily living, social functioning, cognitive functioning, and any periods of decompensation. A moderate limitation may arise when several activities or functions are impaired which would interfere with the claimant's ability to function independently on a sustained basis, especially in a work setting. Moderate tends to be a subjective term used to note how a specific number of different behaviors would affect his or her ability to function. It entails my opinion on the evidence relating to symptoms: such as pain, depression, and anxiety. Moderate notes the evidence is not extreme or excessive, but is enough to reduce his or her ability to function, day-to-day.

PageID.1350.

ALJ Grit addressed the doctor's response as follows:

> When asked to clarify, in September 2016, Dr. Walberer noted that "moderate" refers to severity according to the functional limitations imposed by medical and emotional issues that are presented by the claimant and is based on the effect these have on activities of daily living, social functioning, cognitive functioning, and any periods of decompensation (Ex. B40F/1). He stated that a moderate limitation may arise when several activities or functions are impaired that would interfere with the claimant's ability to function independently on a sustained basis, especially in a work setting (Ex. B40F/l). He reported that moderate tends to be a subjective term used to note how a specific number of different behaviors would affect function and that it entails his opinion on the evidence relating to symptoms including pain, depression, and anxiety (Ex. B40F/1). He stated that moderate notes the evidence is enough to reduce an individual's ability to function day to day, but is not extreme or excessive (Ex. B40F/1).

PageID.62.

ALJ Grit evaluated Dr. Walberer's opinion in light of that response as follows:

> Dr. Walberer's assessment, at times, notes that a functional ability is limited, but does not indicate the extent to which it is limited. For example, he assessed the claimant's ability to maintain attention and concentration for extended

15

periods would seem to be limited (Ex. B7F/5). He also noted there would seem to be limitations in the claimant's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (Ex. B7F/5). He stated the claimant's ability to work in coordination or proximity to others would seem to be affected by his anxiety (Ex. B7F/5). He opined the claimant's ability to make simple work-related decisions would seem to be limited (Ex. B7F/5). His assessment is also not set forth in terms of the most the claimant is able to do. However, he had the opportunity to examine the claimant (Ex. B7F). His assessment, to the extent that it demonstrates the claimant is able to engage in sustained work-related activities with some limitations in social functioning and interaction as well as some limitations in concentration, persistence, or pace, is consistent with the medical evidence of record as a whole, including objective examination findings and the longitudinal treatment record, discussed in detail above. Despite the claimant's report of significant limitation in social functioning and notes of inappropriate behavior during evaluations, during evaluations, the claimant was frequently polite, cooperative, and/or pleasant with good eye contact (Testimony; B2E/9; B3E/l-7; Ex. B2F/3-4; B3F/10; B4F/11-72; B7F/2; B21F/2; B28F/2, 78-131; B33F/2; B37F/4; B38F/3; and B39F/3, 11; *See also* Ex. B16F and B18F). The claimant has significant limitations in concentration, persistence, or pace with difficulty focusing, paying attention, and remembering reported prior to the current application date with suboptimal attention and concentration in April and June 2015 and reduced short-term memory in July 2015 (Testimony; B2E; B3E; B2F; B4F; B7F; B16F; B18F; and B28F). However, in April, May, June, July, and December 2014, as well as in January, February, March, October, November, and December 2015, he had intact attention and concentration (Ex. B4F/11- 17, 54-72; B21F/2; and B28F/2, 103-116). During a consultative evaluation in July 2015, his long-term memory was appropriate (Ex. B7F/3-4). In January and July 2016, it was noted in the claimant's social history that the claimant had average ability to understand instructions (Ex. B32F/2 and B38F/2). In Febmary, April, Jw1e, August, and September 2016, he had intact attention and concentration (Ex. B28F/123, 131; B33F/2; B37F/4; B39F/3, 11; B41F/4; and B42F/4). The record demonstrates consistent attendance at medication reviews (Ex. B1F-B42F). The medical evidence also demonstrates some improvement with treatment (*See Ex*. B4F/11, 16, 53, 59, 65, 71, 76; B18F/11; B21F/2; B28F/93, 98, 101-102, 107, 114, 121-123, 129-131; B32F/1; B33F/1; B37F/2; B39F/1-3; B41F/2; and B42F/2). The claimant is able to live alone, use public transportation, handle his own finances, attend to his personal care independently and without reminders, prepare his own meals, perform household chores, and shop (Ex. Testimony; B3E; B7F; B18F; and B28F). Accordingly, I give partial weight to Dr. Walberer's assessment.

PageID.62-63.

Plaintiff contends that ALJ Grit's interpretation is not consistent with Dr. Walberer's interrogatory response in which he indicated a moderate limitation may arise when

several activities or functions are impaired that would interfere with the claimant's ability to function independently on a sustained basis, especially in a work setting. PageID.1396. The Appeals Council remanded in part due to the vagueness of Dr. Walberer's opinion. The ALJ attempted to have him quantify the term "moderate," but the doctor was unable to do so, stating that "[m]oderate tends to be a subjective term." In the end, Dr. Walberer gave a vague opinion and the ALJ explained why she gave it partial weight.

While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted). The ALJ's explanation meets that articulation standard and is supported by substantial evidence. Accordingly, plaintiff's claim of error will be denied.

    **4.    The ALJ did not properly consider all of the evidence when she determined plaintiff's RFC and gave an incomplete hypothetical to the VE.**

As an initial matter, plaintiff repeats the Appeals Council's criticism of the ALJ Imsland's RFC finding, i.e., that ALJ Grit "only gave credit to opinions or evidence to the extent that they supported her findings and she disregarded or failed to address properly opinion evidence that contradicted her conclusions." PageID.1397. The Court rejects plaintiff's statement that ALJ Grit mischaracterized (or "cherry-picked") the record to support her conclusion. This argument is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir.2009).

17

Next, plaintiff points out that the ALJ found him to have limitations in concentration and reduced short term memory. PageID.1397. The ALJ's RFC accounted for these by restricting him to "to simple, routine, and repetitive tasks in low stress work environments which are defined as minimal changes in job settings or duties, and only occasional judgment to perform simple tasks; no interaction with the general public; occasional interaction with coworkers and no tandem tasks; and only occasional interaction with supervisors when tasks are being performed as directed." PageID.53. Accordingly, plaintiff's claim of error will be denied.

Finally, plaintiff contends that the ALJ's findings are inconsistent with her hypothetical question posed to the vocational expert (VE). Plaintiff, however, does not address the ALJ's interaction with the VE or cite any authority to support his claim regarding the legal sufficiency of the hypothetical questions posed and the VE's answers. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

### B. The ALJ's refusal to subpoena Dr. Walberer was an abuse of discretion and denied plaintiff the right to due process.

Plaintiff contends that the ALJ abused her discretion by not granting his request that Dr. Walberer be subpoenaed to testify at the remand hearing, but by submitting interrogatories to the doctor to clarify his previous opinions. Plaintiff's Brief (ECF No. 10, PageID.1388-1389). As discussed, the Appeals Council stated that "[i]t may be necessary to recontact this source in an effort to resolve the opinion's vagueness," PageID.268, and that ALJ Grit did recontact him by sending him interrogatories. Plaintiff did not develop any argument to support his claim that the ALJ's course of action violated his due process. Rather, plaintiff simply cited *Flatford v. Chater*,

93 F.3d 1296 (6th Cir. 1996).[2] PageID.1399. This perfunctory argument is deemed waived. *McPherson*, 125 F.3d at 995-96.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 28, 2018 /s/ Ray Kent
United States Magistrate Judge

---

[2] In *Flatford*, the Sixth Circuit stated that "Due process requires that a social security hearing be 'full and fair.'" *Flatford*, 93 F.3d at 1305, citing *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971).